UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

SCOTT ALAN KLINE,

    Plaintiff,

v.                                        Case No. 3:21cv1006-LC-HTC

WARDEN C. MAIORANA,
DR. M. MONSALUD and
LIEUTENANT MARTIN,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff, Scott Alan Kline, proceeding *pro se*, filed a complaint under 42 U.S.C. § 1983, ECF Doc. 1, claiming Defendants Warden Maiorana and Dr. Monsalud were deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment and Defendant Lt. Martin violated his Eighth Amendment rights by deliberately breaking his eyeglasses in retaliation for writing grievances. ECF Doc. 1 at 17. This matter is now before the Court on Warden Maiorana's Motion to Dismiss for failure to state a claim. ECF Doc. 12. Upon careful review and consideration of Warden Maiorana's motion, Plaintiff Kline's response, ECF Doc. 19, and the relevant law, the undersigned respectfully recommends Defendant's motion be GRANTED.

## I. BACKGROUND

The following facts[1] are taken from Plaintiff's allegations in the complaint and the grievances he attached as exhibits and are accepted as true for purposes of this motion.[2] Plaintiff is a prisoner who was incarcerated at Blackwater River Correctional Facility ("BRCF") during the times described in the complaint. ECF Doc. 1 at 1.

Plaintiff's eyesight has been failing due to cataract formation in both eyes. In December of 2019, the medical staff at BRCF evaluated Plaintiff and determined he required an optometrist evaluation. It took eight (8) months, however, before Plaintiff was able to see an optometrist. During this time, Plaintiff repeatedly complained of headaches, vertigo, and nausea due to his untreated vision defects.

On July 6, 2020, Plaintiff filed an Informal Grievance (185-2007-0062), checking "Medical" for the destination and stating, "I have eye problems (vision) and was scheduled in December to see the eye doctor. It's been (8) eight months and I still haven't been seen." Inmate Request, ECF Doc. 1 at 21 (July 6, 2020). D.

---

[1] The undersigned has included only those facts relevant to the claim against Warden Maiorana. The other Defendants were only recently served, and their response is not yet due.

[2] "Written instruments that are exhibits to a pleading are considered a part of the pleading." *Pyure Brands, LLC v. Nascent Health Sci. LLC*, 2019 WL 7945226, at *2 (S.D. Fla. Mar. 4, 2019) (citing Fed. R. Civ. P. 7(a); Fed. R. Civ. P. 10(c)). "A court may consider documents attached to the complaint or incorporated by reference without converting the motion into a motion for summary judgment if the documents are: (1) central to the complaint, and (2) the documents' authenticity is not in dispute." *Eisenberg v. City of Miami Beach*, 54 F. Supp. 3d 1312, 1319 (S.D. Fla. 2014) (citing *Day v. Taylor*, 400 F.3d 1272, 1275-76 (11th Cir. 2005)).

McGowan, the Health Services Administrator responded on July 15, 2020, "Due to Covid-19, the optometrist appointments are on hold. Once the Covid-19 restrictions are lifted, you will be scheduled. If you feel you cannot wait, sign up for sick call for the nurse to evaluate you." *Id.*

Plaintiff then filed a Formal Grievance (2007-185-082) on July 20, 2020, *Id.* at 24, in which he complained:

> I have vision problems that cause my left eye to be extremely cloudy and blurry. It causes severe headaches and makes it extremely difficult to read and write. I told medical about this in December and was scheduled to see the eye doctor. It's been (8) eight months and I still have not had medical care for the issue. I submitted a grievance and was told I would not be seeing the optometrist till after Covid-19, which is literally indefinitely. I have a right to medical care while in your custody since you restrict me from visiting my own provider. I need to see an optometrist, I am suffering with a disability now and it is causing me agonizing pain.

ECF Doc. 1 at 24.

On August 5, 2020, Dr. Monsalud and Warden Maiorana personally signed the response denying the Formal Grievance (2007-185-082) and stated as follows:

> Your grievance was received, reviewed and evaluated with the following response:
>
> Review finds that the BRCRF has been on restrictive movement especially from outside providers coming into the facility due to covid-19. However, Medical staff is here 24 hours a day seven days a week. If you are experiencing the issue, for which you are grieving, sign up for sick call so the nurse can evaluate you and if necessary refer you to our physician for evaluation. Should our clinician feel it is necessary we can schedule an off site evaluation.

Case No. 3:21cv1006-LC-HTC

> Therefore, based on the above information, your grievance is denied.
>
> You may obtain further administrative review of your complaint by obtaining Form DC1-303, completing the form, providing attachments as required by Chapter 33-103.007, and forwarding to the Bureau of Policy Management and Appeals, 501 South Calhoun St. Tallahassee, FL 32399-2500.

*Id.* at 23.

Based on Dr. Monsalud and the Warden's response to the grievance, Plaintiff alleges "[a]t this point Warden C. Maiorana and Dr. Monsalud actually subjectively were aware that Plaintiff was not only at a substantial risk of harm, but that he was actually actively being harmed. By refusing to act on the harm Warden C. Maiorana and Dr. Monsalud disregarded Plaintiff's safety and disregarded that harm by failing to respond to it in an objectively reasonable manner. The showing that Defendant's (sic) Warden C. Maiorana and Dr. Monsalud failed to respond to the issue and were deliberately indifferent is axiomatic. They refused to provide treatment and simply advised Plaintiff to do what he had already done, ad nauseum, and place another sick call request." ECF Doc. 1 at 14-15.

Plaintiff seeks affirmative injunctive relief and nominal damages in the Defendants' official and personal capacities, as well as punitive damages. *Id.* at 17

## II.   THE MOTION TO DISMISS

Warden Maiorana moves to dismiss the complaint for three reasons.  First, he argues, "The Warden's mere denial of Plaintiff's grievance is insufficient to impose liability under 42 U.S.C. § 1983 as a matter of law.  It is well established that a supervisor's act of merely denying a grievance is insufficient 'personal participation' to render a supervisor liable under 42 U.S.C. § 1983."  ECF Doc. 12 at 3.

Second, he argues "The Warden did not act with deliberate indifference to Plaintiff's medical needs by deferring to medical professionals.  The complaint establishes that Warden Maiorana neither imposed a blanket ban on outside medical care nor involved himself in the decision-making process of whether Plaintiff's condition required outside care.  Rather, the Complaint establishes that outside care was available to Plaintiff at the discretion of Plaintiff's medical providers and that the Warden deferred to such providers in making that decision."  *Id.* at 4.

Third, he argues the Warden is "a private citizen and has no 'official capacity' in which to be sued" because he is employed by a private company, not the State or Florida Department of Corrections ("FDOC").  *Id.* at 6.

As discussed below, the undersigned agrees Plaintiff has failed to state a claim against the Warden because there are no facts showing the Warden was personally involved in Plaintiff's medical treatment and no facts showing that the Warden imposed any GEO Group policy or custom which resulted in the wrongful denial or

delay of medical treatment to the Plaintiff. Moreover, the Warden's deference to medical providers to handle Plaintiff's treatment was objectively reasonable.

### III. LEGAL STANDARDS

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), the question is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). However, "[l]abels and conclusions" or "a formulaic recitation of the elements of a cause of action" that amount to "naked assertions" will not suffice. *Id*. (quotations and citation omitted). Moreover, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Roe v. Aware Woman Ctr. For Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001) (quotations and citations omitted).

Also, in considering a motion to dismiss for failure to state a claim, the Court reads Plaintiff's *pro se* allegations in a liberal fashion, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972), and accepts "[a]ll well-pleaded facts in plaintiff's complaint and all reasonable inferences drawn from those facts . . . as true." *McGinley v.*

*Houston*, 361 F.3d 1328, 1330 (11th Cir. 2004) (citation omitted). However, the duty of a court to construe *pro se* pleadings liberally does not require the court to serve as an attorney for the plaintiff. *Freeman v. Sec'y, Dept. of Corr.*, 679 F. App'x 982, 982 (11th Cir. 2017) (citing *GJR Invs., Inc. v. Cty. Of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998)).

## IV. DISCUSSION

A § 1983 claim may arise when prison officials act with deliberate indifference to an inmate's serious medical needs in violation of the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). To state a claim for deliberate indifference to a serious medical need, Plaintiff must allege facts sufficient to satisfy two components: one objective and the other subjective. *See Farmer v. Brennan*, 511 U.S. 825, 846 (1994). The objective element is met by showing a risk of serious medical harm.

To satisfy the subjective element, Plaintiff must show Warden Maiorana acted with deliberate indifference to that risk. *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004). The subjective element requires Plaintiff to make the following three sub-showings: (1) subjective knowledge of a serious risk of harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence. *Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003) (quotations omitted). "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from

liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844–45 ("Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause.").

Also, "[w]hen alleging deliberate indifference—medical or otherwise—against a supervisor, a prisoner must show either that (a) the supervisor personally participated in the alleged constitutional deprivation or (b) there is a causal connection between the supervisor's actions and the alleged constitutional deprivation." *Sealey v. Pastrana*, 399 F. App'x 548, 552 (11th Cir. 2010). A plaintiff may establish a causal connection by showing (1) "a history of widespread abuse", sufficient to put the supervisor on notice of a need to correct an alleged deprivation, (2) the "supervisor's improper custom or policy leads to deliberate indifference to constitutional rights" or (3) facts to "support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Douglas v. Yates*, 535 F.3d 1316, 1322 (11th Cir. 2008).

Filing a grievance with a supervisory person does not, alone, make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied. *See e.g., Gallagher v. Shelton,* 587 F.3d 1063, 1069 (10th Cir. 2009) ("[D]enial of a grievance, by itself without any

connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983."); *Grinter v. Knight,* 532 F.3d 567, 576 (6th Cir. 2008) ("The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983.") (quoting *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir. 1999)); *Lomholt v. Holder,* 287 F.3d 683, 683 (8th Cir. 2002) (holding that defendants' denial of plaintiff's grievances did not state a substantive constitutional claim); *see also Rickerson v. Gills,* No. 5:11cv279/MP/GRJ, 2012 WL 1004733, at *3 (N.D. Fla. Feb.8, 2012) (finding prisoner failed to state § 1983 claim against prison official whose sole involvement was to review and deny plaintiff's administrative grievance at the DOC Secretary's level of review.), *Report and Recommendation adopted,* 2012 WL 1004724 (N.D. Fla. Mar. 22, 2012).

Plaintiff does not appear to dispute this well-settled principle. Instead, he argues in the response the Warden "personally participated in the medical decision process." ECF Doc. 19 at 2. He claims the Warden "was deliberately indifferent by completely and totally preventing any treatment at all on his cataracts." *Id.* He claims the Warden "refused to authorize" treatment and "specifically created, policies, orders, and/or procedures for medical staff preventing treatment." *Id.* at 3.

Plaintiff, however, cannot amend his complaint through a response to a motion to dismiss. *See Long v. Satz,* 181 F.3d 1275, 1278–79 (11th Cir. 1999)); *see*

*also Bruhl v. Price Waterhousecoopers Int'l,* 2007 WL 997362, at *4 (S.D. Fla. Mar. 27, 2007) (noting that a plaintiff may not supplant allegations made in their complaint with new allegations raised in a response to a motion to dismiss); *accord Walker v. City of Orlando,* 2007 WL 1839431, at *5 (M.D. Fla. Jun. 26, 2007) (limiting consideration to the allegations contained in the complaint, even when new allegations were raised in response to a Motion to Dismiss). Regardless, nowhere in the complaint *or* Plaintiff's response does Plaintiff allege any facts showing how the Warden prevented treatment, refused treatment, or personally participated in any medical decision other than through the denial of Plaintiff's grievance. Nowhere does Plaintiff identify any policy or custom imposed by the Warden that resulted in his denial of treatment. Instead, all Plaintiff makes are conclusory allegations of personal involvement by the Warden and the existence of an unidentified custom and policy.

Conclusory allegations, however, are not sufficient to overcome a motion to dismiss. Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *J.L. Lane Lending, LLC v. Wells Fargo Bank Nat'l Ass'n*, 543 F. Supp. 3d 1225, 1228 (M.D. Ala. 2021), citing *Twombly*, 550 U. S. at 555, 570 (while "detailed factual allegations" are not required, plaintiff must do more than make "an unadorned, the-defendant-unlawfully-harmed-me accusation"); *Cummings v. Palm Beach Cty.*, 642

F. Supp. 248, 249 (S.D. Fla. 1986) ("vague and conclusory allegations of legal deprivations that fail to state facts upon which to weigh the substantiality of the claim do not satisfy the requirements of Rule 8 of the Federal Rules of Civil Procedure.").

Thus, the fact that Warden Maiorana denied Plaintiff's grievance, without more, does not show he personally participated in or caused Plaintiff not to receive medical care. *See Magwood v. Fla. Dep't of Corr.,* No. 3:12CV14/MCR/CJK, 2012 WL 5279178, at *4 (N.D. Fla. Oct. 11, 2012), *report and recommendation adopted,* No. 3:12CV14/MCR/CJK, 2012 WL 5279170 (N.D. Fla. Oct. 25, 2012). Indeed, Plaintiff's allegations show that he received treatment within a month after filing the formal grievance and received corrective glasses within two months of filing the formal grievance.

Moreover, it is well settled that, "supervisory officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care." *Williams v. Limestone Cty., Ala.*, 198 F. App'x 893, 897 (11th Cir. 2006) (citing *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993); *White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988)). Thus, it was reasonable for the Warden to refer Plaintiff to sick call and rely on the determinations made by the nurses, physicians, and clinicians as to the proper treatment for Plaintiff. *Mathis v. Corizon Health Inc.,* No. 3:14CV469/MCR/EMT, 2015 WL 3651088, at *5 (N.D. Fla. June 11, 2015)

("Assistant Warden Courtney's deferring to Dr. Schwartz's decisions regarding Plaintiff's medical treatment was objectively reasonable.").

"There is no law, case law or otherwise, that establishes that a Warden's denial of a medical grievance, based on his belief in a false medical staff statement, is unconstitutional. In other words, there is no law that establishes that in determining whether to deny a medical grievance, a Warden must take additional steps or instigate an investigation further than what was admittedly done in this case. There is also no law that establishes that a Warden in a similar situation must take additional steps after such a grievance was denied to assure that Plaintiff received his requested medical equipment. It is likewise unlikely that any reasonable warden in a similar situation would have taken additional steps or pursued a further investigation." *Allah v. Gramiak*, 2014 WL 824217, at *7 (M.D. Ga. Mar. 3, 2014).

The plaintiff in *Wood v. Nichols*, raised a similar claim against Warden Maiorana, and Chief Magistrate Judge Timothy entered judgment in favor of the Warden. *Wood v. Nichols*, No. 3:20CV5492/MCR/EMT, 2021 WL 4483517 (N.D. Fla. Aug. 31, 2021), *report and recommendation adopted*, No. 3:20CV5492/MCR/EMT, 2021 WL 4478664 (N.D. Fla. Sept. 30, 2021). Although Judge Timothy decided that case on summary judgment and for failure to exhaust, she also found that even if plaintiff had exhausted his claim of deliberate indifference

against the Warden, it would have nonetheless failed as a matter of law. Thus, that decision is applicable and persuasive.

Like Kline, the plaintiff in *Wood* alleged it was the warden's responsibility to ensure inmates were transported to medical appointments and received proper medical care and that Warden Maiorana "neglected to perform his duty in this regard". ECF Doc. 45 at 4, *Wood.* Like Kline, the plaintiff in *Wood* wrote a formal grievance complaining of lack of medical treatment (for a fractured wrist). *Id.* at 11. A doctor responded, denying the grievance, and the Warden signed off on the response. *Id.* In discussing the plaintiff's claim, Judge Timothy first explained, "Warden Maiorana indisputably was 'not a medical professional, nor directly involved in [plaintiff's] medical care;' thus, 'to be liable under the Eighth Amendment for deliberate indifference to [Plaintiff's] serious medical need, [Plaintiff] must establish that [Warden Maiorana] was responsible for his constitutional deprivation in a supervisory capacity.'" *Sealey v. Pastrana*, 399 F. App'x 548, 552 (11th Cir. 2010).

After discussing the elements to establish supervisory liability, including to show a casual connection, Judge Timothy concluded:

> Although Warden Maiorana may have been familiar with Plaintiff and his medical issues, the only record evidence regarding Warden Maiorana's involvement in Plaintiff's medical treatment is Warden Maiorana signing off on Dr. Semple's response to Plaintiff's October 6 grievance, which indicated that a review of Plaintiff's medical records

> revealed Plaintiff had received adequate and appropriate medical treatment, including referrals to specialists, whose recommendations were followed.
>
> * * * *
>
> And Plaintiff has not alleged—much less adduced evidence—that Maiorana had policies in place that condoned deliberate indifference to his medical needs, including policies regarding transportation of inmates to outside medical appointments.

*Id.* at 24.

Thus, like the plaintiff in *Wood,* Kline's allegations against the Warden fail as a matter of law. As stated above, other than conclusory statements, "Plaintiff ma[de] no allegation that [warden] attempted to prevent [P]laintiff from receiving proper medical care, that [warden] interfered with treatment in any way, or that a policy or practice of [warden's] was a moving force behind the alleged deprivation of proper medical attention to [P]laintiff." *Nichols v. Burnside*, 2011 WL 2036709, at *3 (M.D. Ga. Apr.21, 2011) (dismissing claim of supervisory liability for denial of a grievance as against prison warden), *adopted by* 2011 WL 2020662 (M.D. Ga. May 24, 2011).

Finally, Plaintiff, also cannot recover against the Warden in his official capacity. First, a claim against the Warden in his official capacity is "essentially [] assigning liability to [his] employer," – in this case, GEO Group. *See Grawbadger v. Emanoilidis*, 2012 WL 3838933, at *8 (M.D. Fla. Sept. 4, 2012) (noting plaintiff's

Case No. 3:21cv1006-LC-HTC

claim against defendants in their official capacities is a claim against the entity defendants represent, GEO Group); *Raby v. Adams*, 2020 WL 8172707, at *3 (S.D. Ga. Dec. 22, 2020), *report and recommendation adopted*, 2021 WL 134621 (S.D. Ga. Jan. 13, 2021); *Pesci v. Budz*, 2015 WL 1349711, at *8 (M.D. Fla. Mar. 25, 2015) (an "official capacity" suit against Director Budz, director of the Florida Civil Commitment Center, run by GEO Group, was "essentially against the entity that employs Budz, i.e., GEO Group.").

Second, under § 1983, to impose liability on GEO Group, Plaintiff must show: (1) that his constitutional rights were violated; (2) that [GEO Group] had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation."[3] *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). "A policy is a decision that is officially adopted by the [entity] or created by an official of such rank that he or she could be said to be acting on behalf of the [entity]." *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1332 (11th Cir.2007). "A custom is practice that is so settled and permanent that it takes on the force of law." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997).

---

[3] "When a private entity . . . contracts with a county to . . . perform[] a function traditionally within the exclusive prerogative of the state" it is subject to suit under § 1983. *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997).

Case No. 3:21cv1006-LC-HTC

Demonstrating a policy or custom requires "show[ing] a persistent and wide-spread practice." *Depew v. City of St. Mary's, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986); *Goebert v. Lee Cnty.,* 510 F.3d 1312, 1331–32 (11th Cir. 2007).  Finally, Plaintiff can only prove causation by showing that GEO Group's "deliberate conduct ... was the moving force behind [his] injury." *Fields v. Corizon Health, Inc.,* 490 F. App'x 174, 185 (11th Cir. 2012) (quoting *McDowell,* 392 F.3d at 1292) (alteration in original).  As stated above, however, Plaintiff has identified no custom or policy by GEO Group that led to his constitutional violation.

## V.   CONCLUSION

Accordingly, it is respectfully RECOMMENDED:

1.   That Warden Maiorana's Motion to Dismiss (ECF Doc. 12) be GRANTED.

2.   That the claims against Warden Maiorana be DISMISSED WITH PREJUDICE for failure to state a claim.

3.   That no judgment be entered at this time and the matter returned to the Magistrate Judge for further proceedings regarding the remaining defendants.

At Pensacola, Florida, this 8th day of February, 2022.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

Case No. 3:21cv1006-LC-HTC

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed **within fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.