UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

SCOTT ALAN KLINE,

    Plaintiff,

v.                                              Case No. 3:21cv1006-LC-HTC

DR. M. MONSALUD and
LIEUTENANT MARTIN,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff, Scott Alan Kline, proceeding *pro se*, filed a complaint under 42 U.S.C. § 1983, ECF Doc. 1, against Defendant Dr. Monsalud for a delay in receiving eye treatment and against Defendant Lt. Martin for breaking Plaintiff's eyeglasses.[1] ECF Doc. 1 at 17. Plaintiff sues Dr. Monsalud under the Eighth Amendment for deliberate indifference to a medical need. He sues Lt. Martin under the First Amendment for breaking Plaintiff's glasses in retaliation for filing grievances.[2] Each Defendant has filed a motion to dismiss. ECF Docs. 31 and 33.

---

[1] The Plaintiff also sued Warden Maiorana, but that claim was dismissed by the Court on March 31, 2022. ECF Doc. 36 (adopting Report and Recommendation at ECF Doc. 28).

[2] Although Plaintiff does not reference the First Amendment in his complaint, reading his complaint liberally, as this Court is required to do, the Court interprets Plaintiff's complaint as seeking to state a claim against Lt. Martin for retaliation. That is also how Lt. Martin reads the complaint. And in his response, Plaintiff concedes that Lt. Martin's characterization of the complaint as it relates to her is correct. ECF Doc. 35.

Upon careful review and consideration of the motions, Plaintiff Kline's responses, ECF Docs. 35 and 37, and the relevant law, the undersigned respectfully recommends Defendant Dr. Monslaud's motion to dismiss be DENIED and Defendant Lt. Martin's motion to dismiss be GRANTED.

I.   BACKGROUND

The following facts are taken from Plaintiff's allegations in the complaint and the grievances he attached as exhibits and are accepted as true for purposes of this motion.[3] Plaintiff's allegations relate to events that occurred when he was a prisoner incarcerated at Blackwater River Correctional Facility ("BRCF"). ECF Doc. 1 at 1.

In December of 2019, the medical staff at BRCF evaluated Plaintiff and determined he required an optometrist evaluation. ECF Doc. 1 at 14. It took eight (8) months, however, before Plaintiff was able to see an optometrist. *Id.* During this time, Plaintiff repeatedly complained of headaches and nausea due to his untreated vision defects but received "no optometrist visit" over the next six (6) months. Upon his complaint to medical, the only response he received was that he would go "after Covid-19 was over." *Id.*

---

[3] "Written instruments that are exhibits to a pleading are considered a part of the pleading." *Pyure Brands, LLC v. Nascent Health Sci. LLC*, 2019 WL 7945226, at *2 (S.D. Fla. Mar. 4, 2019) (citing Fed. R. Civ. P. 7(a); Fed. R. Civ. P. 10(c)). "A court may consider documents attached to the complaint or incorporated by reference without converting the motion into a motion for summary judgment if the documents are: (1) central to the complaint, and (2) the documents' authenticity is not in dispute." *Eisenberg v. City of Miami Beach*, 54 F. Supp. 3d 1312, 1319 (S.D. Fla. 2014) (citing *Day v. Taylor*, 400 F.3d 1272, 1275-76 (11th Cir. 2005)).

On July 6, 2020, "(7) seven months after medical was aware [of Plaintiff's] vision issues, the pain it was causing him, and the nausea from the pain, Plaintiff filed an informal grievance." *Id.* In that informal grievance (185-2007-0062), Plaintiff stated, "I have eye problems (vision) and was scheduled in December to see the eye doctor. It's been (8) eight months and I still haven't been seen." *Id.; see also* ECF Doc. 1 at 21. D. McGowan, the Health Services Administrator, denied the grievance on July 15, 2020, and stated, "Due to Covid-19, the optometrist appointments are on hold. Once the Covid-19 restrictions are lifted, you will be scheduled. If you feel you cannot wait, sign up for sick call for the nurse to evaluate you." ECF Doc. 1 at 21.

On July 20, 2020, Plaintiff filed a formal grievance (2007-185-082), "again stressing the severe pain". ECF Doc. 1 at 14. Specifically, Plaintiff stated as follows in the grievance:

> I have vision problems that cause my left eye to be extremely cloudy and blurry. It causes severe headaches and makes it extremely difficult to read and write. I told medical about this in December and was scheduled to see the eye doctor. It's been (8) eight months and I still have not had medical care for the issue. I submitted a grievance and was told I would not be seeing the optometrist till after Covid-19, which is literally indefinitely. I have a right to medical care while in your custody since you restrict me from visiting my own provider. I need to see an optometrist, I am suffering with a disability now and it is causing me agonizing pain.

ECF Doc. 1 at 24.

On August 5, 2020, Dr. Monsalud and Warden Maiorana denied the formal grievance. Dr. Monsalud personally signed the response and stated as follows:

> Your grievance was received, reviewed and evaluated with the following response:
>
> Review finds that the BRCRF has been on restrictive movement especially from outside providers coming into the facility due to covid-19. However, Medical staff is here 24 hours a day seven days a week. If you are experiencing the issue, for which you are grieving, sign up for sick call so the nurse can evaluate you and if necessary refer you to our physician for evaluation. Should our clinician feel it is necessary we can schedule an off site evaluation.
>
> Therefore, based on the above information, your grievance is denied.
>
> You may obtain further administrative review of your complaint by obtaining Form DC1-303, completing the form, providing attachments as required by Chapter 33-103.007, and forwarding to the Bureau of Policy Management and Appeals, 501 South Calhoun St. Tallahassee, FL 32399-2500.

*Id.* at 23.

Plaintiff alleges "[a]t this point Warden C. Maiorana and Dr. Monsalud "actually subjectively were aware that Plaintiff was not only at a substantial risk of harm, but that he was actually actively being harmed." ECF Doc. 1 at 14. "By refusing to act on the harm Warden C. Maiorana and Dr. Monsalud disregarded Plaintiff's safety and disregarded that harm by failing to respond to it in an objectively reasonable manner. . . . They refused to provide treatment and simply

advised Plaintiff to do what he had already done, ad nauseum, and place another sick call request." *Id.* at 14-15.

Less than two months later, on September 3, 2020, Plaintiff saw an optometrist who diagnosed Plaintiff with cataracts in both eyes and vision deterioration. *Id.* at 15. By October 30, 2020, Plaintiff had received corrective eyewear, but no treatment of the cataracts as ordered by the optometrist. *Id.* In April of 2021, Plaintiff was seen by the optometrist again, who noted Plaintiff's eyes have "gotten much worse" and ordered a stronger prescription. *Id.*

However, "Staff at Blackwater have not provided the cataract treatment ordered by the optometrist, even though the Covid-19 lockdown of the facility is over, and despite Plaintiff's (2) two to (3) three sick call requests each month concerning the issue" and "the pain caused by the issue, the nausea caused by the issue, and the vertigo caused by the issue, not to mention the vision distortion and handicapping caused…." ECF Doc. 1 at 16. "[S]ince the optometrist ordered the treatment, Plaintiff's vision is steadily degrading [and] he is experiencing nearly constant pain, regular bouts of vertigo and nausea."[4] *Id.*

---

[4] Plaintiff also claims he is being denied eye drops and medical staff will not give him additional non-narcotic pain relievers. It is, however, unclear how such allegations relate to the two defendants in this action.

Case No. 3:21cv1006-LC-HTC

Regarding Defendant Martin, Plaintiff claims "Lt. Martin maliciously broke [his] reading glasses during this time period in retaliation to my grievances and grievance appeals." *Id.* at 15. As a result, Plaintiff "has had to suffer needlessly without corrective eyewear between July 1st, 2020 and October 2020." *Id.* at 16.

## II.   LEGAL STANDARDS

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), the question is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). However, "[l]abels and conclusions" or "a formulaic recitation of the elements of a cause of action" that amount to "naked assertions" will not suffice. *Id*. (quotations and citation omitted). Moreover, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Roe v. Aware Woman Ctr. For Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001) (quotations and citations omitted).

Also, in considering a motion to dismiss for failure to state a claim, the Court reads Plaintiff's *pro se* allegations in a liberal fashion, *Haines v. Kerner*, 404 U.S.

519, 520-21 (1972), and accepts "[a]ll well-pleaded facts in plaintiff's complaint and all reasonable inferences drawn from those facts . . . as true." *McGinley v. Houston*, 361 F.3d 1328, 1330 (11th Cir. 2004) (citation omitted). However, the duty of a court to construe *pro se* pleadings liberally does not require the court to serve as an attorney for the plaintiff. *Freeman v. Sec'y, Dept. of Corr.*, 679 F. App'x 982, 982 (11th Cir. 2017) (citing *GJR Invs., Inc. v. Cty. Of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998)).

Here, Defendants move for dismissal based on two grounds. First, Defendants argue Plaintiff is a 3-striker under 28 U.S.C. § 1915(g), who did not pay the filing fee at the time he filed suit. Second, Defendants argue Plaintiff has failed to state a claim against them. Each of these arguments are discussed below.

### III. PLAINTIFF WAS NOT A THREE-STRIKER AT THE TIME HE FILED SUIT.

Generally, under 28 U.S.C. § 1915(g), known as the "3-strike" provision, a prisoner who has had at least three suits dismissed for certain specified reasons cannot proceed *in forma pauperis* absent a showing of imminent danger. Specifically, the statute reads as follows:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state

> a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C.A. § 1915(g). Defendants argue Plaintiff has had three strikes and thus, dismissal is appropriate because he did not pay the filing fee when he filed this action. The Court disagrees. Plaintiff only had one strike *at the time* he filed this suit.

Defendants identify the following cases as qualifying as a strike: (1) *Kline v. Maiorana, et. al.*, 3:20-cv-5942-LAC/EMT (N.D. Fla.), a civil rights complaint; (2) *Kline v. Maiorana*, 21-12620 (11th Cir.), the appeal of that civil rights action; and (3) *Kline v. Secretary*, 3:20cv856-BJD-JBT (M.D. Fla.), a habeas action. The first case, 3:20-cv-5942, was dismissed as "malicious" for failing to disclose his prior litigation history on July 9, 2021, *before* Plaintiff filed this action. ECF Docs. 10 & 11 in 3:20-cv-5942 (July 9, 2021). Thus, that case would be considered a "strike" under § 1915(g) for purposes of this action.

However, the appeal of that action, *Kline v. Maiorana*, 21-12620 (11th Cir.), does not count as a strike for this action because it was not dismissed as frivolous until December 22, 2021, *after* the instant complaint was filed on September 1, 2021. ECF Doc. 1 at 49. The number of strikes is determined at the time the Plaintiff files suit. *See Dollar v. Coweta Cty. Sheriff Off.*, 510 F. App'x 897, 900 (11th Cir. 2013) ("Our published decisions have consistently looked at the *time of filing* when

considering whether § 1915(g) prevents a prisoner from proceeding *in forma pauperis*."); *see also Constant v. Crum*, No. 3:20CV5617/LAC/EMT, 2021 WL 6498089, at *2 (N.D. Fla. Dec. 14, 2021), *report and recommendation adopted*, No. 3:20CV5617/LAC/EMT, 2022 WL 137969 (N.D. Fla. Jan. 14, 2022) (declining to count towards the three-strike total a case dismissed after the original complaint was filed and *in forma pauperis* status granted but before an amended complaint in the current case was filed.).

Also, dismissals of habeas cases do not qualify as strikes under § 1915(g). "All of our sister circuits to consider the issue have reached the same conclusion, holding that dismissals of habeas petitions filed pursuant to sections 2254 or 2255 cannot constitute strikes for purposes of the PLRA." *Jones v. Smith*, 720 F.3d 142, 146 (2d Cir. 2013) (citing *Mitchell v. Fed. Bureau of Prisons*, 587 F.3d 415, 418 (D.C.Cir.2010); *Andrews v. King*, 398 F.3d 1113, 1122 (9th Cir.2005) ("Congress intended § 1915(g) to address civil rights and prison condition cases, not habeas petitions.")).

Plaintiff, therefore, is not a 3-striker under 28 U.S.C. § 1915(g), and dismissal is not appropriate on that ground.

Case No. 3:21cv1006-LC-HTC

## IV. DR. MONSALUD'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

As stated above, Plaintiff's sues Dr. Monsalud under the Eighth Amendment for deliberate indifference to a serious medical need. "The Eighth Amendment forbids punishments that are cruel and unusual in light of contemporary standards of decency." *Hernandez v. Fla. Dep't of Corr.*, 281 F. App'x 862, 865 (11th Cir. 2008). The Supreme Court has interpreted the Eighth Amendment as including a prohibition against "deliberate indifference to an inmate's serious medical needs…." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

To state a claim for deliberate indifference, Plaintiff must allege facts from which the Court can reasonably infer the existence of the following: (1) a serious medical need; (2) a defendant's deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury. *Melton v. Abston*, 841 F.3d 1207, 1220 (11th Cir. 2016). To establish the first element, a plaintiff must demonstrate "an objectively serious medical need" so grave that, "if left unattended, [it] poses a substantial risk of serious harm." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (internal quotation marks, alterations, and citations omitted). In the alternative, a serious medical need is determined by whether a delay in treating the need worsens the condition. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009).

Dr. Monsalud does not address this element and, for purposes of this report and recommendation, the Court finds Plaintiff has identified a serious medical need. He was diagnosed with cataracts. *See Weston v. Estes*, 2015 WL 4999701, at *5 (N.D. Ala. Aug. 21, 2015) (finding that "the cataracts in [Plaintiff's] left eye constitute[d] a serious medical need"). Even before then, he reported having vertigo, nausea, blurry vision, headaches and severe pain, which, for purposes of this report, are sufficient to show a serious medical need. *See e.g., Rudolph v. Barber*, 2013 WL 1084291, at *7 (S.D. Ala. Jan. 29, 2013), *report and recommendation adopted,* 2013 WL 1080446 (S.D. Ala. Mar. 14, 2013) (finding plaintiff's headaches, blurry vision, and eye pain constitute an objectively serious medical need because "these symptoms could indicate a serious or even life-threatening problem"); *King v. Lawson*, 2020 WL 2462896, at *3 (M.D. Ga. Feb. 26, 2020) ("Plaintiff's consistent complaints of blurry vision, alone, could reasonably constitute a serious medical need"); *Harris v. Prison Health Servs.*, 706 F. App'x 945, 951 (11th Cir. 2017) ("Severe pain that is not promptly or adequately treated can also constitute a serious medical need depending on the circumstances.").

The second element requires "a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish." *Taylor*, 221 F.3d at 1258. Plaintiff must sufficiently allege: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere

negligence." *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011) (citing *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004)). While a disagreement over treatment does not necessarily rise to the level of a constitutional violation, a "complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference." *Neal v. Bolton*, No. 3:06CV17/MCR/EMT, 2008 WL 5156685, at *12 (N.D. Fla. Dec. 9, 2008) (denying summary judgment against doctor for 3-month delay in treating glaucoma) (citing *Harris v. Coweta County,* 21 F.3d 388, 393 (11th Cir.1994)).

Here, Plaintiff told Dr. Monsalud, through a grievance, that his left eye was cloudy and blurry, that he had headaches, that he was referred to an eye doctor eight (8) months earlier and that he is in agonizing pain. Despite having this information, Dr. Monsalud told Plaintiff to go to sick call. Dr. Monsalud did not ensure that Plaintiff saw an eye doctor and his stated reason for doing so was not based on a medical determination. "The standard may be met where there is a showing that jail officials denied or delayed an inmate from receiving necessary medical treatment for non-medical reasons." *Munera v. Metro West Detention Ctr.*, 351 F.Supp.2d 1353, 1363 (S.D. Fla. 2004) (citing *Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 704 (11 Cir.1985)).

Plaintiff's case here is similar to two other cases that were decided by this Court, both of which involve eye injuries. In *Lee v. Centurion of Florida, LLC*, 4:19-

Case No. 3:21cv1006-LC-HTC

cv-210-RH/HTC, the plaintiff sued Dr. Hasty for failing to follow up to ensure he received a retina exam. The Court denied Dr. Hasty's motion to dismiss, based on similar arguments. In *George v. Corrs. Corp. of America,* 5:16-cv-254-MW/HTC, the plaintiff sued two nurses and CCA for failing to schedule a follow up visit for potential glaucoma. The undersigned recommended the defendants' motion to dismiss be granted, which was rejected by Judge Walker. Judge Walker found that, "while a close call," plaintiff had alleged facts sufficient to state a claim. ECF Doc. 55 at 2.

While Plaintiff may ultimately be unsuccessful on his claim, at this stage of the proceedings, and applying the motion to dismiss standards, the undersigned finds Plaintiff has stated a claim against Dr. Monsalud in his individual capacity. *See McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) (finding delays in referring plaintiff to a dentist, oral surgeon, and ENT specialist over several months while plaintiff was in significant pain sufficient to state a claim for deliberate indifference); *Rhiner v. Sec'y, Fla. Dep't of Corr.*, 696 F. App'x 930, 932 (11th Cir. 2017) (reversing the district court's decision to dismiss claims because "[t]hough [plaintiff]'s serious medical need was follow-up wound care rather than the original medical emergency, the unexplained lack of medical treatment he received from September 11 to September 22 at Okeechobee and from September 25 to October 1 at South is sufficient to state a claim for deliberate indifference under § 1983").

The undersigned finds, however, that Plaintiff has not stated a claim against Dr. Monsalud in his official capacity. A suit against Dr. Monsalud in his official capacity is the equivalent of a claim against his employer – here, Wellpath, LLC, the medical provider for BRFC.[5] *See e.g., Pesci v. Budz,* 2015 WL 1349711, at *8 (M.D. Fla. Mar. 25, 2015) (an "official capacity" suit against the director of the facility run by GEO Group was an essentially an action against GEO Group). To state a claim against Wellpath, Plaintiff must allege that an official policy or custom of Wellpath was the moving force behind the deprivation. *See Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985). Plaintiff, however, has not alleged any facts to show that his medical treatment was delayed as a result of any Wellpath (or GEO Group) policy or custom. Therefore, he has not stated official capacity claims against them even for injunctive relief.

## V. LT. MARTIN'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

As stated above, while Plaintiff did not mention retaliation or the First Amendment in his Statement of Claims, Plaintiff alleges the following against Lt. Martin:

---

[5] "When a private entity ... contracts with a county to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state." *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997). The entity thus "becomes the functional equivalent of the municipality." *Id.*

> Lt. Martin maliciously broke my reading glasses during this time period in retaliation to my grievances and grievance appeals. This issue was also administratively exhausted (See Exhibit "F").

ECF Doc. 1 at 15. In a formal grievance, Plaintiff alleges his room was "'shook down' in retaliation to [his] grieving an issue with the law library and asking to see a sgt." *Id.* at 33. He further alleges, "Sgt. Martin said in front of multiple witnesses that 'he's the one' pointing at [plaintiff]," and saying the law librarian told the Sgt. to "toss his stuff". *Id.* Plaintiff claims as part of the shake down his glasses were broken. *Id.* Plaintiff admits his cellmate was strip searched as well but says none of his stuff was touched. *Id.* He contends this conduct was "to harass, intimidate and retaliate against [him] …." ECF Doc. 1 at 33.

To state a First Amendment retaliation claim, a plaintiff must allege facts sufficient to establish the following: "(1) his speech was constitutionally protected; (2) he suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008). "[T]o establish a causal connection [between protected speech and retaliatory actions], the plaintiff must show that the defendant was subjectively motivated to take the adverse action because of the protected speech." *Keeton v. Anderson–Wiley*, 664 F.3d 865,

878 (11th Cir. 2011) (quoting *Castle v. Appalachian Technical College*, 631 F.3d 1194, 1197 (11th Cir. 2011)).

Plaintiff's allegations fall far short of establishing those elements. Instead, Plaintiff's claim of retaliation is purely conclusory. *See Smith v. Fla. Dep't of Corr.*, 375 F. App'x 905, 911 (11th Cir. 2010) ("Smith's complaint makes only conclusory allegations of a retaliatory motive; it does not allege facts sufficient to raise that conclusion above the speculative level."); *Enriquez v. Kearney,* 694 F. Supp. 2d 1282, 1298 (S.D. Fla. 2010) ("A prisoner retaliation claim must be factual, and mere conclusory allegations of unconstitutional retaliation will not suffice."). As one court has explained, "'Claims of retaliation are ... easily fabricated [and] pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized [by the prisoner] as a constitutionally proscribed retaliatory act.'" *Alverson v. Mills*, 2021 WL 1215804, at *8 (M.D. Ala. Jan. 20, 2021), *report and recommendation adopted in part,* 2021 WL 1216851 (M.D. Ala. Mar. 30, 2021) (internal citations omitted).

The fact that Plaintiff filed grievances and subsequently his glasses were broken, without more, does not show that Lt. Martin broke Plaintiff's glasses because of the grievances. There are no allegations, for example, that Lt. Martin

Case No. 3:21cv1006-LC-HTC

was even aware of the grievances. Plaintiff also admits his cellmate was strip searched; which goes against his allegation that he was targeted. Regardless, in the grievance, Plaintiff alleges he was targeted by the librarian and not necessarily by Lt. Martin and does not state why he was targeted by the librarian. There are no facts showing the library was aware of any grievances. Moreover, there are no facts showing that the glasses were broken intentionally, rather than accidentally as part of the search.

Also, as Lt. Martin points out, the fact that Plaintiff's glasses were broken is not the type of conduct that would necessarily deter an ordinary inmate from filing a grievance. *See Felder v. Filion*, 2006 WL 8435089, at *6 (N.D.N.Y. Sept. 5, 2006), *report and recommendation adopted,* 2006 WL 8435072 (N.D.N.Y. Nov. 21, 2006) ("it would seem unlikely that the confiscation of glasses or any other type of item as such during a search would deter other inmates from filing grievances…."). Indeed, it did not actually deter Plaintiff from filing grievances. *See Mitchell v. Thompson*, 564 F. App'x 452, 457 (11th Cir. 2014) (reasoning that the plaintiff "continued to file grievances against [the defendant], even after [the alleged retaliation], which illustrates that a person of ordinary firmness would likely not be deterred from engaging in such speech"); *Moss v. Gradia,* 2010 WL 337603 (N.D. Fla. Jan. 21, 2010) (no adverse effect from the alleged retaliation where the plaintiff filed six (6) grievances against the defendant after the alleged retaliation).

Case No. 3:21cv1006-LC-HTC

Thus, the undersigned agrees with Lt. Martin that the claims against her should be dismissed.

Accordingly, it is RESPECTFULLY RECOMMENDED:

1. That Defendant Lt. Martin's motion to dismiss (ECF Doc. 31) be GRANTED for failure to state a claim.

2. That Defendant Dr. Monsalud's motion to dismiss (ECF Doc. 33) be DENIED as to Plaintiff's claim against Dr. Monsalud in his individual capacity.

3. That Defendant Dr. Monsalud's motion to dismiss be GRANTED as to Plaintiff's claim against Dr. Monsalud in his official capacity.

4. That the clerk terminate Lt. Martin as a defendant in this action.

5. That Defendant Dr. Monsalud answer the complaint within the time set forth in the Federal Rules of Civil Procedure.

6. That the matter be referred to the Magistrate Judge for further proceedings.

At Pensacola, Florida, this 13th day of May, 2022.

/s/ *Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed **within fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.