UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

SCOTT ALAN KLINE,

    Plaintiff,

v.                                                                                  Case No. 3:21cv1006-LC-HTC

WARDEN C. MAIORANA,
DR. M. MONSALUD and
LIEUTENANT MARTIN,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Scott Alan Kline, proceeding *pro se*, filed a complaint under 42 U.S.C. § 1983, ECF Doc. 1, claiming Defendant Dr. Monsalud was deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment for failing to provide him with treatment for his vision problems.[1]  This matter is now before the Court on Dr. Monsalud's motion for summary judgment. ECF Doc. 104.  Upon careful review and consideration of Dr. Monsalud's motion, Plaintiff

---

[1] Plaintiff sued Warden Maiorana for deliberate indifference to serious medical needs, but the Warden was dismissed from the case on March 31, 2022.  ECF Doc. 36.  Plaintiff also sued Defendant Lt. Martin, claiming he violated Plaintiff's Eighth Amendment rights by deliberately breaking his eyeglasses in retaliation for writing grievances.  ECF Doc. 1 at 17.  Lt. Martin was dismissed from the case on July 11, 2022.  ECF Doc. 40.  Thus, Dr. Monsalud is currently the only defendant in the case.  The Court denied Dr. Monsalud's motion to dismiss on July 12, 2022.  ECF Doc. 41.

Kline's response, ECF Doc. 109, Dr. Monsalud's reply, ECF Doc. 110, the evidentiary materials supplied by both parties, and the relevant law, the undersigned respectfully recommends Defendant's motion for summary judgment be GRANTED.

## I.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) (citing *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993)).

## II.   STATEMENT OF FACTS

The following relevant facts are obtained from Defendant's and Plaintiff's evidentiary submissions and, other than as noted, are undisputed.

Dr. Monsalud was the chief health officer at Blackwater River Correctional Facility from April 2020 to February 2021.  ECF Doc. 97-1 at 1.  Plaintiff was a prisoner at Blackwater from early 2019 until September 2021.  ECF Doc. 107 at 1.

Dr. Monsalud did not provide any direct medical treatment to Plaintiff. ECF Doc. 97-1 at 3.

Plaintiff began complaining to prison officials that his eyesight was failing in December 2019. On December 17, 2019, Plaintiff submitted a sick-call request stating, "I'm losing vision in my left eye . . . . It's been progressively getting worse over the last 6 months or so." ECF Doc. 97-2 at 20. His medical records show he was examined by Registered Nurse Simpson on December 23, and Simpson initiated an outside eye consult and directed Plaintiff to follow up with sick call as needed. *Id.* at 16.

On March 4, 2020, Plaintiff again filed an inmate sick-call request stating, "My left eye is messed up. Everything is blurry and has a haze around everything." The symptoms started "months ago but it's getting worse very rapidly." *Id.* at 18. He was seen by Nurse Simpson two days later. *Id.* at 19. However, he did not complain about his left eye at that time; instead, he saw Nurse Simpson for neck pain. *Id.*

On June 19, 2020, Plaintiff submitted an informal grievance (185-2006-0232) complaining about his eyesight and the need for assistance in writing a motion for the court. ECF Doc. 97-2 at 1. While Plaintiff mentions he has an eye doctor appointment that has been pending for 7 months, he does not complain about the delay and specifically states the grievance is "solely regarding the refusal to assist

in preparing my motion and not regarding the delay of the optometrist." *Id.* The grievance was denied as unsupported, and Plaintiff was directed to address medical issues with sick call. *Id.*

On July 6, 2020, Plaintiff filed an informal grievance (185-2007-0062) stating, "I have eye problems (vision) and was scheduled in December to see the eye doctor. It's been (8) eight months and I still haven't been seen." ECF Doc. 97-2 at 5. D. McGowan, the Health Services Administrator, responded on July 15, 2020, as follows: "Due to Covid-19, the optometrist appointments are on hold. Once the Covid-19 restrictions are lifted, you will be scheduled. If you feel you cannot wait, sign up for sick call for the nurse to evaluate you." *Id.*

On July 19, 2020, Plaintiff submitted a sick call request to be seen about his eyesight (Plaintiff submitted this request as an informal grievance). *Id.* at 11. On July 23, 2020, T. Martin, AA, responded, "I have your optometry referral that was done on 12/23/19. I will place you on callout to see the optometrist as soon as he returns back to the facility." *Id.*

On July 20, 2020, Plaintiff filed a formal grievance (2007-185-082), in which he continued to complain about vision problems and needing to see an eye doctor.[2]

---

[2] In that formal grievance, Plaintiff states as follows: "I have vision problems that cause my left eye to be extremely cloudy and blurry. It causes severe headaches and makes it extremely difficult to read and write. I told medical about this in December and was scheduled to see the eye

Case No. 3:21cv1006-LC-HTC

ECF Doc. 97-2 at 4.  He also filed a sick-call request two days later on July 22, 2020, about his eye and that he had been waiting 8 months to see a doctor.  Registered Nurse Simpson triaged the sick call request on July 22, 2020, *id.* at 17, and, on July 28, 2020, Plaintiff was examined by Registered Nurse S. Hacker.  *Id.* at 14.  Nurse Hacker noted, "eye blurry x1 year has pending optometry appt." and prescribed "artificial tears x1 bottle."  *Id.*

On August 5, 2020, Dr. Monsalud denied the July 20, 2020, formal grievance (2007-185-082) because "BRCRF has been on restrictive movement especially from outside providers coming into the facility due to covid-19."  Dr. Monsalud reminded Plaintiff medical staff is available 24 hours a day seven days a week, and that he should sign up for sick call.  She further stated that if the clinician feels it is necessary, Plaintiff can be scheduled for an off-site evaluation.  *Id.* at 3.  This was Dr. Monsalud's first and only involvement with Plaintiff regarding his eye complaints.[3]

Less than a month later, on September 3, 2020, Plaintiff was seen by an outside optometrist, Dr. Tugwell, and glasses were ordered.  ECF Doc. 1 at 15; ECF

---

doctor.  It's been (8) eight months and I still have not had medical care for the issue.  I submitted a grievance and was told I would not be seeing the optometrist till after Covid-19, which is literally indefinitely.  I have a right to medical care while in your custody since you restrict me from visiting my own provider.  I need to see an optometrist, I am suffering with a disability now and it is causing me agonizing pain."  ECF Doc. 97-2 at 4.

[3] Plaintiff sought administrative review of Dr. Monsalud's denial, and the Secretary denied Plaintiff's appeal.  ECF Doc. 97-1 at 6.

Doc. 97-2 at 9. There is a dispute of fact regarding whether Dr. Tugwell referred Plaintiff to an outside ophthalmologist during that September visit. Plaintiff's medical records do not show that such a referral was made. ECF Doc. 97-2 at 13. Nonetheless, Plaintiff has submitted a declaration, in which he contends that a referral was made and that he was told by Nurse Kelly that he would go to an ophthalmologist after the quarantine was lifted. ECF Doc. 107 at 2. Plaintiff also asserts Nurse Kelly told him it was up to the medical director to decide. *Id.*

Plaintiff contends he saw Dr. Tugwell again in May or June of 2021, who told him his vision had gotten worse, ordered a stronger prescription for him, and checked on the referral to the ophthalmologist. ECF Doc. 107 at 3. Doctor Monsalud, however, had left BRCRF in February 2021, and had no further involvement in responding to Plaintiff's grievances after August 2020.[4] ECF Doc. 97-1 at 1.

## III. DISCUSSION

Plaintiff sues Dr. Monsalud under 42 U.S.C. § 1983 for violating the Eighth Amendment and claims Dr. Monsalud refused to provide him care when he submitted the July 2020 grievance, and prevented him from having the treatment he

---

[4] On July 28, 2021, Plaintiff submitted an Inmate Request complaining that Dr. Tugwell had diagnosed him with cataracts in both eyes and ordered it be removed, but that he had not received the ordered medical treatment in the intervening 10 months. ECF Doc. 97-2 at 9. The Health Services Administrator, D. McGowan, responded that there "is no written order from either an optometrist or our physician and/or ARNP for cataract surgery at this time." *Id.* Plaintiff appealed the denial of that grievance to the Warden, *id.* at 8, but the Warden did not act on the formal grievance because it was untimely. *Id.* at 7.

Case No. 3:21cv1006-LC-HTC

alleges was ordered by Dr. Tugwell. ECF Doc. 107 at 4. Plaintiff's claims against Dr. Monsalud appear to be based on two things: (1) Dr. Monsalud's denial of the July 2020 grievance; and (2) his claim that Nurse Kelly told him the decision as to whether Plaintiff would be referred to an outside ophthalmologist rested with the medical director, who was Dr. Monsalud at the time. Neither of those events, however, are sufficient to establish a claim of deliberate indifference.

A § 1983 claim may arise when prison officials act with deliberate indifference to an inmate's serious medical needs in violation of the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). To state a claim for deliberate indifference to a serious medical need, Plaintiff must allege facts sufficient to satisfy two components: one objective and the other subjective. *See Farmer v. Brennan*, 511 U.S. 825, 846 (1994). The objective element is met by showing a risk of serious medical harm. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West,* 320 F.3d 1235, 1243 (11th Cir. 2003).

To satisfy the subjective element, Plaintiff must show Doctor Monsalud acted with deliberate indifference to that risk. *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004). The subjective element requires Plaintiff to make the following three sub-showings: (1) subjective knowledge of a serious risk of harm; (2) disregard

of that risk; (3) by conduct that is more than gross negligence. *Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003) (quotations omitted). "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844–45 ("Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause.").

As discussed below, Plaintiff has failed to present evidence from which a reasonable jury could conclude that Dr. Monsalud disregarded a risk of serious harm to the Plaintiff by conduct that is more than gross negligence.[5] First, the record is clear that Dr. Monsalud did not become involved with Plaintiff's treatment or the alleged denial of same until she denied the July 20 grievance. In other words, it is undisputed the first time Dr. Monsalud became aware Plaintiff was suffering from vision problems or had not seen an eye doctor was when she received Plaintiff's July 20 grievance. ECF Doc. 109 at 3.

However, it is well settled that Dr. Monsalud cannot be liable for Plaintiff's failure to see an eye doctor before July 2020, simply because she denied the grievance. *See Gallagher v. Shelton,* 587 F.3d 1063, 1069 (10th Cir. 2009)

---

[5] For purposes of this report and recommendation, the undersigned will presume that Plaintiff's eye condition constitutes a serious medical need.

Case No. 3:21cv1006-LC-HTC

("[D]enial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983."); *see also Rickerson v. Gills,* No. 5:11cv279/MP/GRJ, 2012 WL 1004733, at *3 (N.D. Fla. Feb.8, 2012) (finding prisoner failed to state § 1983 claim against prison official whose sole involvement was to review and deny plaintiff's administrative grievance at the DOC Secretary's level of review.), *Report and Recommendation adopted,* 2012 WL 1004724 (N.D. Fla. Mar. 22, 2012). In other words, the fact that Dr. Monsalud denied Plaintiff's grievance, without more, does not show that Dr. Monsalud personally participated in Plaintiff's medical treatment or treatment decisions. *Magwood v. Fla. Dep't of Corr.,* No. 3:12CV14/MCR/CJK, 2012 WL 5279178, at *4 (N.D. Fla. Oct. 11, 2012), *report and recommendation adopted,* No. 3:12CV14/MCR/CJK, 2012 WL 5279170 (N.D. Fla. Oct. 25, 2012).

Second, Dr. Monsalud's response to the grievance did not constitute deliberate disregard for Plaintiff's eye condition. To the contrary, Dr. Monsalud responded reasonably to the grievance. Dr. Monsalud explained that outside doctors were not regularly coming to the facility because of the COVID lockdown, that Plaintiff should submit a sick call, and if a clinician recommended Plaintiff see an outside doctor, arrangements would be made for him to do so. Indeed, as noted in the medical records, by the time Dr. Monsalud received Plaintiff's grievance, medical staff had already given Plaintiff a referral to an optometrist and had planned

Case No. 3:21cv1006-LC-HTC

for him to be placed on a callout to see the optometrist once the optometrist returned to the institution. Thus, as Plaintiff admits, he saw Dr. Tugwell less than a month later, after the COVID ban was lifted. ECF Doc. 107 at 2.

Finally, to the extent Plaintiff contends Dr. Monsalud prevented Plaintiff from going to see an outside ophthalmologist for cataract surgery as recommended by Dr. Tugwell, Plaintiff has presented no evidence to show that Dr. Monsalud was ever made aware of any such referral. It is undisputed that Plaintiff's medical records do not show that Dr. Tugwell referred Plaintiff to an outside doctor for cataract surgery. And, regardless, Plaintiff has presented no evidence that Nurse Kelly or anyone else advised Dr. Monsalud that such a referral had been made by Dr. Tugwell. Thus, there is no evidence from which a reasonable jury could conclude that Dr. Monsalud violated Plaintiff's Eighth Amendment rights.

## IV. CONCLUSION

Accordingly, it is respectfully RECOMMENDED:

1. That Doctor Monsalud's Motion for Summary Judgment, ECF Doc. 104, be GRANTED.

2. That judgment be entered on all claims against Doctor Monsalud.

3. That the clerk be directed to close the file.

At Pensacola, Florida, this 19th day of July, 2023.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed **within fourteen (14) days** of the date of the Report and Recommendation.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.